UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIE WENG *and* SAN DANG WANG,
*individually and on behalf of all other employees similarly situated*,

          Plaintiffs,

– against –

NEW SHANGHAI DELUXE CORP, YU LIN ZHU, MEI FANG WU, RONG YANG ZHU, YEAH SHANGHAI DELUXE INC, WEI CHEN, YU JUN ZHU, *and* RONG BING ZHU,

          Defendants.

**OPINION & ORDER**

19 Civ. 9596 (ER)

RAMOS, D.J.:

    San Dang Wang and Jie Weng bring this action against their former employers New Shanghai Deluxe Corp ("New Shanghai"), Yeah Shanghai Deluxe Inc ("Yeah Shanghai"), Yu Lin Zhu ("Yu Lin"), Mei Fang Wu ("Mei Fang"), Rong Bing Zhu ("Rong Bing"), Rong Yang Zhu ("Rong Yang"), Yu Jun Zhu ("Yu Jun"), and Wei Chen, alleging that the defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL").  *See* Doc. 21.  A bench trial was held on September 7, 2022.[1]  This Opinion constitutes the Court's findings of fact and conclusions of law on whether the defendants are liable for violating the FLSA and the NYLL, including whether Rong Yang qualifies as an employer under the labor laws.

---

[1] During the bench trial held on September 7, 2022, defense counsel explained that he represented all defendants except Wei Chen who has neither appeared in this action nor responded to the Second Amended Complaint.

I.  BACKGROUND

On October 17, 2019, the plaintiffs brought this action for unpaid minimum wages, overtime compensation, and spread of hours pay as well as the failure to provide wage notices and wage statements.  Doc. 1.  The plaintiffs amended their complaint twice, on November 15, 2019 and May 21, 2021.  Docs. 7, 21.  The defendants answered the Second Amended Complaint on July 19, 2021.  Doc. 26.  After the completion of discovery and an unsuccessful settlement conference before Magistrate Judge Ona T. Wang on February 15, 2022, the parties submitted a joint status report on April 14, 2022 requesting that the Court schedule a trial.  Doc. 38.

The Court held a one-day bench trial on September 7, 2022.  Both plaintiffs appeared and were cross-examined, testifying through a Chinese interpreter.  The parties did not call any other witnesses.[2]

At the outset of the bench trial, defense counsel represented that the defendants did not dispute the plaintiffs' allegations that they neither paid minimum wage, overtime, and spread of hours compensation, nor provided wage notices and wage statements.  Defense counsel further conceded that the defendants did not keep any records on the hours the plaintiffs worked and the pay they received and that the plaintiffs worked six days, and in excess of 60 hours, per week.  The Court therefore asked defense counsel regarding the issues in dispute.  Defense counsel represented that the *only* issue in dispute is whether Rong Yang was an employer.  Accordingly, at the conclusion of the bench trial, the Court directed the parties to provide the legal and factual basis as to why Rong Yang should or should not be considered an employer by September 21, 2022.  Doc. 49.

---

[2] On September 6, 2022, the eve of the bench trial, Rong Yang requested leave to adjourn the trial against him due to sciatic nerve pain.  Doc. 48.  Defense counsel ultimately proceeded with the trial and introduced Rong Yang's trial declaration into evidence in lieu of live testimony.

## II.     FINDINGS OF FACT

### A.     Undisputed Facts[3]

#### i.     *Wang*

From April 20, 2014 through October 25, 2019, Wang was employed as an assistant chef at the restaurant Yeah Shanghai, later known as New Shanghai, which was located at 50 Mott Street, New York, NY 10013.  Doc. 41 ¶¶ 1–2.

Wang was scheduled to work Sunday, Monday, Wednesday, and Thursday, from 1:00 p.m. to 12:00 a.m., and Friday and Saturday, from 12:00 p.m. to 12:00 a.m.  *Id.* ¶ 3.  As a result, Wang usually worked 68 hours per week.  *Id.*  On April 1, 2019, Wang's schedule changed to Sunday, Tuesday, Wednesday, Thursday, Friday, and Saturday from 10:30 a.m. to 10:30 p.m.  *Id.* ¶ 4.  As a result, Wang usually worked 72 hours per week.  *Id.*

Wang was paid twice a month.  *Id.* ¶ 5.  Wang was paid $1,500 per month in 2014; $1,600 per month in 2015; $1,700 per month in 2016; $1,900 per month in 2017; $2,100 per month in 2018; and $2,400 per month in 2019.  *Id.*  Wang was not given wage notices or wage statements.  *Id.* ¶ 6.

#### ii.     *Weng*

From August 30, 2010 to October 2, 2019, Weng was employed as an assistant chef at the same restaurant.  *Id.* ¶¶ 1, 7.

Weng was scheduled to work Sunday, Monday, Wednesday, and Thursday, from 1:00 p.m. to 12:00 a.m., and Friday and Saturday from 12:00 p.m. to 12:00 a.m.  *Id.* ¶ 8.  As a result, Weng usually worked 68 hours per week.  *Id.*

---

[3] Because both parties represented, and the defendants conceded, that the only issue in dispute is whether Rong Yang was an employer, the Court draws these undisputed facts from the plaintiffs' proposed findings of fact and conclusions of law.  Doc. 41.

Weng was also paid twice a month. *Id.* ¶ 9. Weng was initially paid $2,400 per month between August 30, 2010 to August 30, 2018 then $2,800 per month thereafter. *Id.* ¶¶ 10–11. Weng was also not given wage notices or wage statements. *Id.* ¶ 12.

### *iii.  Defendants*

Yu Lin was an owner and manager of the restaurant with the power to hire and fire employees, set wages, set schedules, and maintain employment records. *Id.* ¶ 13. Mei Fang, the wife of Yu Lin, was a manager of the restaurant who hired the plaintiffs. *Id.* ¶¶ 14–15. Rong Bing and Rong Yang are Yu Lin and Mei Fang's sons. *Id.* ¶¶ 19–20. Yu Jun, the brother of Yu Lin, was the owner of the restaurant until 2017 when he gifted it to Yu Lin's younger son, Rong Yang. *Id.* ¶ 17.

## B.  Findings on Disputed Issues of Fact

### *i.  New Shanghai's Liquor License and Lease*

On the registration form with the New York State Liquor Authority, Rong Yang is listed as the principal of New Shanghai. *Id.* ¶ 21; Ex. 5.[4] Furthermore, Rong Yang signed the restaurant's lease as the President of New Shanghai. Doc. 41 ¶ 21; Ex. 6. Mei Fang testified at her deposition that the bank account for New Shanghai is in her and Rong Yang's names. Ex. 8 at Tr. 8:25–9:16.

The defendants do not dispute that Rong Yang's name is on the restaurant's liquor license and lease. Doc. 51 at 3. Instead, Rong Yang testified in his trial declaration that he simply complied with his parents' request that he sign his name on these documents. Doc. 51-3 ¶ 9.

### *ii.  Yu Lin's Testimony*

At his deposition, Yu Lin testified that his brother Yu Jun gave the restaurant to Rong Yang. Yu Lin further testified that "my younger son [Rong Yang] doesn't know

---

[4] The plaintiffs' post-trial briefing cites to the exhibits admitted into evidence during the bench trial.

4

how to run a restaurant, so he asked for help from [Yu Lin which] equals to giving [Yu Lin] the restaurant." Ex. 7 at Tr. 19:8–17.

### iii.    Rong Yang's Testimony

The defendants point to Rong Yang's trial declaration and his college transcripts, and his part-time employment as a home care assistant for his grandmother starting in 2018 through the present, as evidence that he could not have been an employer due to his coursework for 2014 through 2021.  Doc. 51 at 2–3; *see also* Doc. 51-3 ¶¶ 2–4; Doc. 51-4.[5]  In his trial declaration, Rong Yang asserted that he never worked at the restaurant in any position, that he rarely went to the restaurant, and that he was not involved in any aspect of managing the restaurant.  Doc. 51-3 ¶¶ 6–7.  He further stated that he had never seen or known the plaintiffs.  *Id.* ¶ 8.  At his deposition, Rong Yang testified that New Shanghai was the family business, which his uncle gifted him.  Ex. 9 at Tr. 8:17–21, 14:2–5.  He further testified that, other than signing papers related to the restaurant's liquor license, lease, and application for business loans, he had never hired, fired, managed, or paid any of the restaurant employees.  *Id.* at Tr. 15:17–18:5.

### iv.    Wang's Testimony

In her trial declaration, Wang stated that Yu Lin, Mei Fang, and one of their sons regularly told her what to do, supervised her, and paid her, and that these individuals ran the restaurant.  Ex. 13 ¶¶ 10–11.  Wang testified during her deposition that it was always the same son who would sometimes give her her check and tell her what to do.  Doc. 51-2 at Tr. 19:12–21.

---

[5] In their post-trial papers, the defendants cite to the exhibits attached to their brief, which are not labelled consistently with the exhibits admitted into evidence during the bench trial.  For example, Exhibit C to the defendants' brief is Rong Yang's trial declaration, Doc. 51-3, which was admitted into evidence as Exhibit E during the bench trial.  Exhibit D to the defendants' brief is Rong Yang's college transcripts, Doc. 51-4, which were admitted into evidence as Exhibit C during the bench trial.  Rong Yang's federal tax forms for 2019 through 2021, which were admitted into evidence as Exhibit D during the bench trial, are not attached to the defendants' brief.

At trial, Wang testified that she did not know the sons' names and only referred to them as "little bosses." She further testified that one son was at the restaurant all the time while the other son was only present sometimes. Although she did not know what they did at the restaurant, she explained that *both* sons worked at the restaurant, ordered the employees to work more and stay later, and gave her her pay. Wang testified that the second son who was only at the restaurant sometimes gave her pay, told her what to do, and requested that she work later to make dim sum. When asked about the son who gave her checks, Wang explained that he appeared to be approximately 30 years old, and she could not recall whether he wore eyeglasses.[6]

When cross-examined regarding the discrepancy between her deposition testimony and her in-court testimony, Wang explained that she sometimes confused the two sons, as they gave her the payments quickly. Doc. 51 at 4.[7]

### v. *Weng's Testimony*

In Weng's trial declaration, he stated that "[t]he entire time I worked at the restaurant it was the same family, the boss, his wife, and their sons who ran the restaurant." Ex. 12 ¶ 13; *see also id.* ¶ 12 ("Of the two bosses['] sons, it was mainly just one of them who worked at the restaurant, but sometimes the other son would also come to work at the restaurant.").

At his deposition, Weng testified that there was one son who worked upstairs and sometimes went downstairs to where the employees worked to give them their salary and assign work. Doc. 51-1 at Tr. 32:13–17. As for the second son, Weng testified that he occasionally came to the restaurant and worked upstairs, although Weng did not know what the second son did exactly. *Id.* at Tr. 32:18–25, 33:2–9.

---

[6] At the bench trial, defense counsel attempted to impeach the testimony of both plaintiffs by arguing that Rong Yang wears glasses. However, defense counsel presented no evidence establishing this point.

[7] The defendants point to a discrepancy between Wang's trial declaration and her deposition testimony regarding whether she met Yu Lin during her initial job interview at the restaurant in order to argue that she is not credible. Doc. 51 at 4–5. The Court does not find this argument persuasive.

At trial, Weng testified that he did not know the sons' names and referred to them as "little bosses." Weng testified that the son who always gave the employees orders had the nickname "Yang Yang."[8] Weng described this son as being between 25–30 years old and testified that he had not seen the son wear glasses. Weng further testified that the second son was also present at the restaurant, but that he did not know what the second son did, because it would not be appropriate to ask such questions nor did the employees pay attention to these matters. He also testified that it was not really the case that the second son who was only sometimes present at the restaurant would tell him what to do. Doc. 51 at 4.[9]

### vi. *The Court's Findings*

In general, the Court found the plaintiffs' testimony to be credible based on their demeanor at trial and their explanations for any previous inconsistent statements. *Mendez v. Int'l Food House Inc.*, No. 13 Civ. 2651 (JPO), 2014 WL 4276418, at *5 (S.D.N.Y. Aug. 28, 2014) (In assessing witness credibility, a trial court's findings of fact may be based on, among other things, "the demeanor of the witnesses[.]"). Accordingly, consistent with the plaintiffs' testimony, the Court finds as follows: at least one occasion, (1) Rong Yang was present and worked at the restaurant; (2) he paid the employees; and (3) he exercised control over the employees' work schedules and conditions.

## III.  CONCLUSIONS OF LAW

"For liability to attach under the FLSA or the NYLL, a defendant must be an 'employer.'" *Ruixuan Cui v. E. Palace One, Inc.*, No. 17 Civ. 6713 (PGG), 2019 WL 4573226, at *6 (S.D.N.Y. Sept. 20, 2019) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). Although the FLSA does not define the term "employer"

---

[8] During his deposition, Rong Yang testified that his parents call him by the nickname, "Yang Yang." Ex. 9 at Tr. 6:9–14.

[9] In their brief, the defendants cite to Exhibit E for the purported transcript of the September 7, 2022 bench trial. However, their papers do not attach Exhibit E.

in the first instance, it provides that an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see Guerra v. Trece Corp.*, No. 18 Civ. 625 (ER), 2020 WL 7028955, at *8 (S.D.N.Y. Nov. 30, 2020).

The NYLL uses a nearly identical definition of the term "employer," and "[d]istrict courts in this Circuit have interpreted the definition of employer under the [NYLL] coextensively with the definition used by the FLSA." *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2017 WL 2600051, at *3 (S.D.N.Y. June 15, 2017) (quoting *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013)). Thus, courts in this district have applied the same tests to determine whether an individual constitutes an employer under the FLSA and the NYLL. *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014).

In *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984), the Second Circuit adopted an "economic reality" test to assess whether a defendant is an employer under the FLSA. This test considers whether the defendant "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* These factors are to be considered in the totality of circumstances. *Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 142–43 (2d Cir. 2008). Further, none of these factors is dispositive, nor are they exclusive. *Id.* Although the *Carter* factors may be sufficient to establish employment status, they are not necessary to do so. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003).

In *Zheng*, the Second Circuit considered a somewhat overlapping set of factors designed to illuminate whether "an entity has *functional* control over workers even in the absence of the *formal* control measured by the *Carter* factors." *Id.* at 72 (emphasis added). Among the relevant factors considered in *Zheng* are whether the defendants'

8

premises and equipment were used for the plaintiffs' work, the degree to which the defendants supervised the plaintiffs' work, and whether the plaintiffs worked exclusively or predominantly for the defendants. *Id.* Five years later in *Barfield*, 537 F.3d at 143, the Second Circuit held that there is "no rigid rule for the identification of an FLSA employer," as it considered the variety of formal and functional factors set forth in *Carter* and in *Zheng*, respectively, in an effort to "give proper effect to the broad language of the FLSA." "The Second Circuit 'has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'" *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (citation omitted).

Officers and owners of corporations may be deemed employers under the FLSA where "the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions." *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003) (internal quotation marks and citation omitted). "Generally, corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedules or tasks, signing the employee's paycheck or directly hiring the employees." *Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016 WL 4147241, at *6 (S.D.N.Y. Aug. 3, 2016) (internal quotation marks and citation omitted).

The Court finds that there is sufficient evidence to demonstrate that three of the *Carter* factors weigh in favor of finding that Rong Yang was a joint employer.[10] *First*,

---

[10] The Court does not find persuasive the defendants' argument that Rong Yang could not have been an employer given that he was a student and a part-time employee elsewhere. *See Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 144 (2d Cir. 2008) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (observing that joint employer's exercise of limited or occasional control did not remove employment relationship from protections of the FLSA)). "[T]he law does not require an employer

9

there is a close question as to whether Rong Yang had the power to hire and fire employees. Rong Yang testified at his deposition that he had never hired or fired anyone at the restaurant. However, it is undisputed that Rong Yang's uncle gifted Rong Yang ownership of the restaurant, and Rong Yang's father, Yu Lin, testified at his deposition that Rong Yang asked him for help in running the restaurant. Thus, the Court finds that this factor weighs slightly in favor of finding that Rong Yang did have the power to hire employees. *Second*, contrary to Rong Yang's deposition testimony and trial declaration, each of the plaintiffs testified that *both* sons worked at and ran the restaurant. At trial, Wang testified that both sons paid her and ordered her to work later and make dim sum, while Weng testified that "Yang Yang" gave the employees orders. As discussed above, Rong Yang testified at his deposition that his nickname is "Yang Yang." Therefore, the Court finds that Rong Yang supervised and controlled employee work schedules and conditions of employment. *Third*, although the plaintiffs did not establish that Rong Yang set their wages, they each testified that he did give them their checks. Furthermore, the bank account for the restaurant is in Rong Yang's name. Thus, the third factor tips slightly in favor of finding that Rong Yang was an employer. *See Herman*, 172 F.3d at 140 (finding that the defendant was an employer where he occasionally signed payroll checks and participated in the method of paying, but did not set wages). *Fourth*, there is no evidence that Rong Yang maintained employment records for the plaintiffs.

    As set forth above, not every factor must weigh in favor of joint employment for a party to be liable. Indeed, these factors are not exclusive, and the Court makes this determination based upon all the circumstances.

    This conclusion is further supported by the fact that Rong Yang, whose name was on the restaurant's bank account and applications for business loans, exercised financial control over the restaurant. *See id.* at 136 (finding that the defendant qualified as an

---

'to look over his workers' shoulders every day in order to exercise control.'" *Id.* at 147 (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988)).

employer under FLSA where he had bank credit and signed loans for the company). Moreover, Rong Yang is listed as the principal on the restaurant's liquor license and as the President on the lease. *See, e.g.*, *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 509 (S.D.N.Y. 2015) (finding that the defendant was an employer under FLSA where he was the sole owner of the company, described himself as its president, and signed the lease on behalf of the restaurant); *Herman*, 172 F.3d at 137 (holding that the defendant was an employer where he represented himself to outside parties as the "boss" or principal of the company); *Napoli v. 243 Glen Cove Ave. Grimaldi, Inc.*, 397 F. Supp. 3d 249, 266 (E.D.N.Y. 2019) (recognizing that employer status may be established where individual was listed as the president on company forms and the owner on company lease).

Accordingly, the Court finds that Rong Yang is a joint employer and is therefore jointly and severally liable for any damages awarded to the plaintiffs for the defendants' undisputed violations of the FLSA and the NYLL.

## IV. CONCLUSION

For the reasons set forth above, the plaintiffs have established that Rong Yang was a joint employer under the FLSA and the NYLL. The parties are directed to submit their damage calculations on consent based on this Opinion's conclusions of law by October 28, 2022. Plaintiffs' counsel will then be given an opportunity to submit an application for attorneys' fees and costs.

It is SO ORDERED.

Dated:   October 7, 2022
        New York, New York

                                                            Edgardo Ramos, U.S.D.J.